UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PAULA SCHULTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-006 CAN |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On January 5, 2009, Plaintiff Paula A. Schultz ("Schultz"), filed her complaint in this Court. On April 30, 2009, Schultz filed an opening brief, and she asks this Court to enter judgment in her favor or remand this matter to the Commissioner. On July 15, 2009, Defendant, Social Security Administration ("SSA"), filed a response. On August 16, 2009, Schultz filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, motions, the administrative record and the briefs of the parties.

**I.   PROCEDURE**

On June 18, 2004, Schultz filed an application for disability insurance benefits. On the same date, Schultz also filed an application for supplemental security income. In both applications, Schultz alleged disability beginning November 26, 2003. However, the alleged onset date was later amended to June 1, 2004. Schultz claims she is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act. See 42 U.S.C. §§ 216(I), 223; 42 U.S.C. §§ 1611, 1614. Schultz's application was initially denied and again upon reconsideration.

On January 12, 2007, Schultz appeared at a hearing before an Administrative Law Judge

1

("ALJ"). On January 7, 2008, the ALJ found Schultz was not disabled because she could perform a significant number of jobs despite the limitations caused by her impairments. In particular, the ALJ found that Schultz had not engaged in substantial gainful activity since June 1, 2004. In addition, the ALJ found Schultz to have severe impairments, although the ALJ never specified which impairments were severe. However, the ALJ found that Schultz did not have any impairments that met the listed impairments in 20 C.F.R app. 1, subpart P. § 404.

In the instant case, the ALJ found that Schultz had a residual functional capacity sufficient to perform a restricted range of light work. In particular, the ALJ specified that Schultz: (1) could lift and carry 20 pounds occasionally and 10 pounds frequently, (2) would be required to stand and sit while working, standing no more than 75 % of an eight hour work day, (3) could not reach extreme postures more than occasionally, (4) cannot work in atmospheric conditions of dust, smoke, and chemical fumes, (5) cannot engage in work requiring constant manipulation involving fine work such as gripping, grasping, twisting, turning, etc. with her hands and fingers, (6) could not perform work that requires close regimentation of production, and (7) that close and critical supervision. . . would produce unacceptable stress.

Based on this finding, the ALJ determined that Schultz could perform her past relevant work as a retail store manager. Similarly, the ALJ found that Schultz could perform other jobs that exist in significant numbers in the national economy. Thus, the ALJ determined that Schultz was not disabled. Accordingly, the ALJ denied Schultz's applications for DIB and SSI.

On January 23, 2008, Schultz appealed the ALJ's decision to the Appeals Council. On August 15, 2008 the Appeals Council denied review; and, as a result, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470

(7th Cir. 2005). Consequently, on January 6, 2009, Schultz filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636©, and 42 U.S.C. § 405(g).

## II.     ANALYSIS

### A.     Facts

Schultz was 49 at the time of her alleged onset of disability and was 53 at the time of the ALJ's decision. Schultz has a high school education, and her past relevant work includes work as a retail store manager, waitress, and sales clerk.

On April 21, 2004, Schultz was admitted to St. Anthony's for depression and acute alcohol intoxication. She was given counseling and was released the same day. On April 24, 2004, Schultz was admitted to the emergency room for depression and suicidal ideation and was transferred to the psychiatric department for a 72-hour hold. Schultz received counseling over the three day period and was subsequently released. Upon release, Schultz's GAF score was between 60 and 70[1]. On June 22, 2004, Schultz was hospitalized a third time for depression. Schultz's physical presentation consisted of irritable bowel syndrome, Hepatitis C infection, diverticulitis, and chronic obstructive pulmonary disease. Schultz was transferred to the LaPorte center and was admitted with a GAF of 30. Schultz was again given counseling and, after five days of treatment, she showed improvement in eating and sleeping habits. Schultz was subsequently prescribed Desyrel and Lexapro, released, and instructed to seek treatment at the Swanson Center.

---

[1] GAF scores represent on a single day an individual's overall level of functioning, including symptom severity. The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning.

On July 8, 2004, Schultz appeared at the Swanson Center to seek treatment. Upon Schultz's initial examination, her GAF was found to be 45, and she was diagnosed with major depressive disorder, recurrent alcohol dependence, and marijuana dependence. Schultz was prescribed group therapy as well as monthly medical evaluations.

On August 18, 2004, Schultz was admitted to the emergency room for a high blood alcohol level and pain and bruising in her chest area. Schultz was treated and released two days later. On August 23, 2004, Schultz was again admitted to LaPorte Hospital for depression and alcohol intoxication. Schultz denied having any suicidal ideations at that time and was released the next day.

On August 31, 2004, Schultz consulted Dr. John T. Heroldt, who diagnosed Schultz as having alcohol dependence, physiological dependence, and substance-induced mood disorder with depressive features, borderline personality disorder, and a GAF score of 49.

On October 5, 2004, Schultz was again hospitalized for major depression and alcohol intoxication. Schultz was admitted to the St. Anthony Memorial Health Center with a GAF of 38. Schultz was discharged from St. Anthony's on October 9, 2004, with a GAF of 60 and told to seek treatment at the Swanson Center.

On October 11, 2004, Schultz underwent a consultative exam with Dr. Ralph Inabit. (Tr. 391). Dr. Inabit concluded that Schultz showed evidence of the following issues: depression, history of smoking, ethyl alcohol abuse, arthralgia, myalgia, tremor, alcoholic neuropathy, anxiety, Hepatitis C, and cocaine addiction.

On December 17, 2005, Schultz went to the emergency room complaining of arm and neck pain. An x-ray was taken revealing a narrowing of the intervertebral disk spaces from C3

through C6. Schultz was diagnosed with a muscle sprain and released.

On June 23, 2006, Schultz went to the emergency room complaining of depression and suicidal thoughts. Schultz had cut her left wrist shortly before reporting to the emergency room. Schultz was again diagnosed with alcohol dependence and substance abuse, in addition to a personality disorder. She was prescribed Lamictal, Thorazine, Lexapro, and Ativan and released after four days of care. Schultz was again encouraged to seek treatment at the Swanson Center.

On January 12, 2007, Schultz testified at the administrative hearing that she had been fired from her last job as a retail store manager due to a nervous breakdown that required hospitalization. Further, Schultz testified that she had taken a series of medications for depression but was unable to take the medications on a regular basis due to the side effects. At the time of the hearing, Schultz was taking Ativan daily for anxiety and panic attacks, Prilosec for stomach problems, HCTZ for high blood pressure, and Tramadol for back pain.

B.     Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir.

5

2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

C. Schultz's Motion for Summary Judgment or Remand

To be entitled to benefits under the Social Security Act, Schultz must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work

6

under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The major issues this Court must resolve are: (1) whether the ALJ properly assessed Schultz's credibility, (2) whether the ALJ's determination of residual functional capacity was supported by substantial evidence, and (3) whether the AL made erroneous findings at steps four and five. This Court will address each of Schultz's arguments in turn.

    1.    <u>The ALJ's determination of Schultz's credibility is supported by substantial evidence</u>.

Schultz alleges that the ALJ's determination of her credibility was erroneous. Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003): <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001). <u>See</u> also <u>Prochska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported. . . can the finding be reversed."). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 915 (7th Cir. 2003); <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite

7

the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 966-7p.

Schultz argues that the ALJ made an erroneous credibility determination. Specifically, Schultz alleges that the reasons behind the ALJ's credibility determination are not supported by the evidence on record. This Court disagrees. In finding Schultz's testimony to be not credible, the ALJ noted that Schultz had inconsistently reported her substance abuse to medical authorities on numerous occasions. In support of this conclusion, the ALJ cited to several medical and treatment reports where Schultz misrepresented her substance abuse to treating physicians. For example, the ALJ observed that when Schultz was hospitalized in June of 2004 she admitted to regular use of marijuana. Yet when Schultz was again admitted to the hospital several months later, in August, the ALJ noted that she denied any drug use. Similarly, the ALJ observed that on October 5, 2004, Schultz reported to employees at St. Anthony's that she had not used cocaine in over twenty-five years. However, the ALJ noted that just six days later on October 11, Schultz admitted to having used cocaine in the last several months. As such, the ALJ concluded, due to Schultz's repeated misrepresentations to medical authorities, that Schultz was not credible.

In addition, the ALJ found that Schultz's statements regarding the intensity, regularity, and debilitating effects of her symptoms were not credible because the symptoms were not supported by objective medical evidence. For example, the ALJ noted that although Schultz had alleged substantial hand impairment, examining physicians Inabnit and Miller noted no sensory loss in the extremities and no focal motor or neurosensory deficits. Moreover, Schultz claimed to suffer from significant vision impairment and has difficulty driving. However, the ALJ observed that there are absolutely no medical records or statements documenting any such type of vision

8

impairment. Further, during the hearing, Schultz alleged she suffers severe digestive problems and commonly vomits and has diarrhea after eating. However, as noted by the ALJ, Schultz has not been treated for being underweight or malnourished. Moreover, the ALJ noted that Schultz has had minimal care for gastrointestinal problems over the past several years, consisting of one trip to the emergency room for non specific abdominal pain.

This Court finds the ALJ's credibility determination to be reasonable. This Court can clearly discern, from the text of the ALJ's opinion, the reasons behind the ALJ's credibility determination. Golembiewski, 322 F.3d at 915. Further, when placed in context with the ALJ's outline of the record evidence, this Court can clearly see how each of the ALJ's evaluations find evidentiary support in the record. The ALJ, in his analysis, relied on the relevant medical reports, treatment notes, treatment history, and Shultz's own testimony to determine that she was not credible. The ALJ's conclusion was based on Schultz's inconsistent statements to physicians, the lack of medically determinable illnesses, the lack of treatment received for the alleged illnesses, and the extreme nature of Schultz's claims during the hearing. Such discussion of the evidence suffices to create the requisite evidentiary support and logical basis that is necessary for this Court to uphold the determination. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). Therefore, because the ALJ relied on substantial evidence in the record and sufficiently articulated his reasoning for discrediting Schultz's testimony, this Court concludes that the ALJ's credibility determination is sufficiently articulated and substantially supported.

      2.    <u>The ALJ's residual functional capacity determination is supported by substantial evidence</u>.

Next, Schultz alleges that the ALJ improperly determined her residual functional capacity.

9

In particular Schultz alleges that the ALJ failed to account for all of Schultz's mental limitations, improperly considered alcohol abuse issues, and failed to consider relevant evidence of Schultz's alleged physical impairments.

A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart 336 F.3d 535, 539 (7th Cir. 2003). A decision is supported by substantial evidence if based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972).

Schultz first argues that the ALJ failed to account for all of her mental limitations. Specifically, Schultz argues that the ALJ did not fully incorporate her mental limitations into the residual functional capacity determination. However, this Court disagrees and concludes that the ALJ's determination of residual functional capacity is supported by substantial evidence. Further, the Court finds that the ALJ's determination of Schultz's residual functional capacity properly took into account the issues raised by Schultz.

The ALJ, in evaluating Schultz's mental limitations, used the "special technique" provided by the Social Security Administration to determine the severity of these limitations. As part of this technique the ALJ quantified the limiting affects of Schultz's bipolar disorder and depression. Further, after considering the various opinions of treating physicians regarding Schultz's GAF upon discharge, the ALJ limited the weight given to consultative examiner Dr. Heroldt's opinion due to brevity of contact. Finally, the ALJ concluded that Schultz suffered

10

from mental impairments which restrict the work she can perform but found that she would still have the residual functional capacity to perform a restricted range of light work. Having quantified Schultz's limitations, the ALJ then incorporated these limitations into a lengthy residual functional capacity finding.

The analysis performed by the ALJ is sufficient to create the logical bridge from the evidence to his conclusion. <u>Haynes,</u> 416 F.3d at 626. In the instant case, the ALJ followed the procedure to determine residual functional capacity laid out by the Social Security Administration, examined and weighed the medical evidence presented, quantified the effects of Schultz's depression and bipolar disorder, and incorporated these limitations directly into the finding. Inasmuch as Schultz asks that the medical evidence regarding her mental impairments be reweighed, this Court must decline to do so. Accordingly, this Court finds that the ALJ's residual functional capacity determination properly incorporated Schultz's mental limitations and is supported by substantial evidence.

Secondly, Schultz argues that the ALJ improperly "made inferences to construe Plaintiff's alcohol use against her," that the ALJ "ignored and dismissed evidence from both treating and consultative physicians," and "played doctor." This Court notes that Schultz's argument is not a procedural challenge to the ALJ's analysis. Rather, this Court views Schultz's argument as an attack against the evidentiary support for the ALJ's determination regarding alcohol use. In this regard, this Court concludes that the ALJ's conclusions are supported by substantial evidence and additionally that the ALJ properly took into account Schultz's past alcohol use.

In formulating his opinion, the ALJ evaluated and discussed the evidence of record regarding Schultz's lengthy alcohol abuse and mental health treatment through the years of 2004

11

and 2005. Although the ALJ noted that Schultz suffered from bipolar disorder, depression, alcohol dependence, and cannabis dependence, the ALJ also noted that the record evidence showed the primary reason for Schultz's multiple hospitalizations during 2004 and 2005 was acute intoxication. In addition, the ALJ referenced the opinions of state psychologists who determined that Schultz would not have any disabling mental limitations if she refrained from abusing alcohol and drugs. Further, the ALJ cited to numerous places in Schultz's medical record and testimony to show that Schultz's mental health and GAF improved significantly during periods of sobriety and treatment. Specifically, the ALJ noted that during a two year period of sobriety Schultz required no psychiatric hospitalization, indicating that, with sobriety and medication, Schultz could function normally. Finally, the ALJ noted that Schultz has been sober since 2006 and reported no further hospitalizations or medical treatment. The analysis by the ALJ is sufficiently thorough for this Court to be able to "trace the path of the ALJ's reasoning." Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

In particular, the ALJ interpreted Schultz's record of hospitalization and alcohol abuse as an indication that while sober Schultz is able to function normally. Such a conclusion is reasonable based on the evidentiary record and does not constitute "playing doctor." Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001)(cases which are remanded for playing doctor are those in which the ALJ fails to address relevant evidence). Further, in his analysis, the ALJ specifically cited to and relied upon the opinions of state psychologists and treating examiners in finding Schultz's residual functional capacity. 20 C.F.R. § 404.1529(c)(3)(v) (regulations expressly permit the ALJ to consider a claimant's treatment history). See also Simila v. Astrue, 573 F.3d 503, 519 (7th Cir. 2009). The ALJ did not fail to address relevant evidence, and as a

consequence, the ALJ's conclusion is well supported by substantial evidence.

Finally, Schultz argues that the ALJ failed to consider relevant evidence of her alleged physical impairments. In assessing the alleged problems with Schultz's back and upper extremities, the ALJ examined the relevant evidence put forth by Schultz to prove that she suffers from degenerative disc disease and decreased grip. The ALJ, pursuant to 20 C.F.R. 404.1513, gave no weight to the conclusory statement offered by Dr. Kirkham that Schultz suffers from degenerative disc disease. 20 C.F.R. § 404.1513(a) requires that medically determinable impairments be established by acceptable medical sources. Since a chiropractor is not an acceptable medical source under 20 C.F.R. § 404.1513(a) the ALJ properly gave the chiropractor's assessment of Schultz's back condition limited weight. In addition, while Schultz submitted an emergency room report regarding her back problems, the ALJ noted that the examining physician diagnosed the cause of her back and neck pain as muscle strain. Schultz submitted no further evidence referencing her alleged back condition. Similarly, in regards to Schultz's claim of decreased motor strength and grip, the ALJ examined the relevant evidence and concluded that the evidence did not support a claim of hand impairment.

Further, in formulating his opinion, the ALJ spent considerable time discussing and evaluating the evidence on the record regarding Schultz's alleged physical impairments. Citing to the reports and diagnoses of two separate consultative examiners, the ALJ relied upon the physician's express findings of no medically determinable hand impairments. Similarly, the ALJ relied upon a diagnosis of muscle sprain as the cause of Schultz's back pain during her December of 2005 hospitalization.. The ALJ's reliance upon these medical reports and evidence, in conjunction with a complete lack of acceptable medical evidence showing a physical impairment

13

of the back or hands, provides a substantial evidentiary basis for the ALJ's determination that Schultz suffered from no medically determinable back or hand impairment. As a result, this Court concludes that the ALJ's determination of Schultz's physical impairments is supported by substantial evidence.

In conclusion, after reviewing the ALJ's opinion, this Court finds that the ALJ properly evaluated Schultz's physical impairments and properly weighed the evidence presented. The ALJ's lengthy four page discussion of Schultz's alleged impairments and his evaluation of the relevant medical evidence builds the requisite logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626.

   3.   The ALJ's findings at step four and five were proper and are supported by substantial evidence.

Schultz subsequently argues that the ALJ made erroneous conclusions at steps four and five. At step four, Schultz argues that Vocational Expert's ("VE") testimony conflicted with the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to obtain a reasonable explanation for the apparent conflict. In particular, Schultz argues that the job given by the vocational expert in step 4, retail store manager, (DOT 185.167-046), requires "high levels of stress and pace" and does not contain a sit/stand option as required under the ALJ's hypothetical.

At step four of the ALJ's analysis, the ALJ must determine if the claimant still has an RFC that permits her to perform her past relevant work. 20 C.F.R. § 404.1520(e). In determining if the claimant can perform her past relevant work, the ALJ must compare the demands of the work with her present capacities. Strittmatter v. Schweiker, 729 F.2d 507, 509 (7th Cir.1984). The ALJ can "base his comparison on the functional demands and job duties of the applicant's past

14

occupation as generally required by employers throughout the national economy." Orlando v. Heckler, 776 F.2d 209, 215-16 (7th Cir.1985). Further, an applicant who "cannot perform the excessive functional demands and or job duties actually required in the former job but can perform the functional demands as generally required by employers throughout the economy" should not be found to be disabled. Smith v. Barnhart, 388 F.3d 251, 253 (7th Cir. 2003).When a vocational expert provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between that evidence and the information provided in the DOT. Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006). If the vocational expert's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict. Id. If a claimant does not identify a potential conflict at the time of the hearing then the claimant must show on appeal that the conflict was obvious enough that the ALJ should have noticed without any assistance. Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008).

At the hearing on January 12, 2007, the VE testified regarding the possibility of someone with Schultz's residual functional capacity performing work similar to that performed by Schultz. The vocational expert testified that Schultz performed her work at a medium exertional level. The VE also testified that someone with Schultz's education, work history, and physical limitations would be capable of working as a retail store manager at a light exertional level, as the job is typically performed but not as Schultz performed it. Based on the vocational expert's testimony, the ALJ found that Schultz could perform her past work, although not as she performed it, but as it is generally performed.

Schultz argues that the ALJ incorrectly found that she could perform her relevant past

15

work because he relied upon faulty testimony from the vocational expert without resolving an apparent conflict between the expert's testimony and the DOT. In the instant case, this Court finds the ALJ's reliance upon the vocational expert's testimony to be reasonable. First, the vocational expert's testimony did not *apparently* conflict with the DOT's definition. See Prochaska, 454 F.3d at 735. Contrary to Schultz's assertion, the DOT's definition for Retail Manager does not specify any requisite level of skill or pace. See DOT 185.167-046. Since the DOT definition does not state that a particular skill level or pace is required for the retail manager position in general, the vocational expert's testimony that Schultz could perform this work was not contradictory. Thus, there was no apparent conflict, and the ALJ did not need to request further clarification. Prochaska, 454 F.3d at 735. Additionally, Schultz argues that the DOT definition does not mention a sitting/standing option. See DOT 185.167-046. The vocational expert testified that a sitting/standing option could be presumed from the nature of the work described in the DOT definition, such as payroll, interviewing, paperwork, and other sedentary activities. Such a conclusion, drawn directly from the activities mentioned in the DOT definition cannot be said to be an apparent conflict requiring the ALJ to explore the issue further. Prochaska, 454 F.3d at 735.

Finally, Schultz argues that the ALJ's finding at step five was erroneous. Specifically, Schultz argues that the ALJ's hypothetical did not incorporate her mental limitations into the residual functional capacity determination. Moreover, Schultz again argues that the VE's testimony conflicted with the DOT. This Court interprets Schultz's arguments as further challenges to the ALJ's determination of residual functional capacity and the VE's testimony.

16

At step five, if the claimant cannot perform her past relevant work, then the ALJ must determine if she can perform other work in society. 20 C.F.R. § 404.1520(g). If the claimant can perform a significant number of jobs available in the economy then the claimant is not disabled. 20 C.F.R. § 404.1520(g).

After reviewing the ALJ's analysis, this Court finds that the ALJ's hypothetical was properly submitted and that reliance upon the vocational expert's testimony was proper. This Court has already concluded that the ALJ made a valid residual functional capacity finding supported by substantial evidence and sufficiently articulated. Similarly, this Court has already concluded that the VE's testimony did not apparently conflict with the DOT. Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record. Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). In the instant case, the ALJ examined Schultz's mental limitations and quantified their effects. Specifically, the ALJ factored Schultz's established mental limitations into the residual functional capacity by finding that Schultz would be unable to work under close supervision or under intense criticism. The ALJ then posed a hypothetical to the VE incorporating Schultz's specific limitations. Thus, the ALJ did not fail to factor Schultz's mental limitations into the hypothetical and the hypothetical was properly submitted to the vocational expert. Furthermore, the ALJ's properly relied upon the vocational expert's testimony.

### III. CONCLUSION

For the aforementioned reasons, this Court concludes that the ALJ provided substantial evidence and sufficient articulation in support of his credibility determination. Similarly, the

ALJ's determination of Schultz's RFC is supported by substantial evidence in the record and supported by a sufficiently articulated analysis by the ALJ. Finally, this Court concludes that the ALJ's conclusions at steps four and five of the analysis were not in error. Therefore, Schultz's motion for reverse or remand is **DENIED**. [Doc. No. 14]. Accordingly, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 28th Day of October, 2009.

<u>S/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge